778 P.2d 912

Curtis COLLINS and Annie Collins, on behalf of their son, Curtis M. COLLINS, Jr., and Sunwest Bank of Albuquerque, Conservator for Curtis M. Collins, Jr., Plaintiffs–Appellees,

v.

John PERRINE, Defendant–Appellant.

No. 9775.

Court of Appeals of New Mexico.

June 1, 1989.

Certiorari Denied Aug. 2, 1989.

Ron Morgan, Albuquerque, for plaintiffs-appellees.

John Perrine, Albuquerque, pro se.

## OPINION

APODACA, Judge.

Defendant John Perrine (Perrine) appeals an adverse jury verdict of $2,958,789 entered against him in a legal malpractice case. This appeal was originally consolidated with Cause No. 9768, in which the same jury verdict was entered against defendant Ray Tabet (Tabet). Because the panel was unable to agree on disposition of the quasi-judicial immunity issue involving Tabet, an order severing the two appeals has been entered and Cause No. 9768, with respect to the quasi-judicial immunity issue, has been certified to the supreme court as a case involving an issue of substantial public interest.

The jury held defendant Tabet liable as guardian ad litem (guardian) for the negligent approval of the settlement in a medical malpractice case. Perrine was held liable as plaintiffs' attorney for negligently preparing the medical malpractice case and recommending settlement.

In their effort to overturn the judgment, both defendants, either individually or collectively, raised the following issues:

(1) As guardian, was Tabet acting as an arm of the court, cloaked with quasi-judicial immunity?

(2) As guardian, was Tabet a public employee within the meaning of the Tort Claims Act, NMSA 1978, Sections 41–4–1 to 41–4–29 (Repl.1986) (the Act)?

(3) Did defendants breach their respective duties as guardian and attorney, thus supporting the jury's determination of negligence?

(4) Was the respective negligence of defendants a proximate cause of plaintiffs' damages?

(5) Does the doctrine of finality of settlement preclude recovery against defendants?

(6) Did the trial court err in its rulings regarding several evidentiary matters?

(7) Did the trial court err in denying a remittitur of the jury award?

Cause No. 9768 having been certified to the supreme court for decision on Issue (1), we do not address that issue in this opinion. Because the remaining issues, as they affect Tabet, need not be addressed until the threshold question of immunity under Issue (1) is resolved, our discussion of those issues will involve only Perrine. Having given these important and significant questions due consideration, we resolve the issues raised by Perrine against his arguments, as discussed in this opinion, and affirm the verdict and judgment as to him.

## FACTS

In December 1977, plaintiffs Curtis and Annie Collins (the Collinses) took their son, Mikey, to the emergency room of Presbyterian Hospital (Presbyterian). Mikey was examined by Dr. Sollins and Nurse Ironsides and sent home. The next morning Mikey was still ill and the Collinses took him to the Indian Health Service Hospital (IHS) in Albuquerque. Mikey was examined at that hospital and sent to a pedia-

trician, Dr. Saland. Dr. Saland correctly diagnosed Mikey as suffering from spinal meningitis and began treatment immediately. Unfortunately, the disease had already progressed significantly. Mikey was left permanently mentally and physically handicapped; incapable of speaking, walking, feeding himself, bathing himself, or moving any limb except his right arm.

The Collinses retained defendant Perrine in April 1978 in order to pursue a medical malpractice claim against Presbyterian and Dr. Sollins, for misdiagnosis of Mikey's disease. Perrine took the claim before the Medical–Legal Panel in September 1978. The Panel voted 4–2 against finding any negligence on the part of Presbyterian or Dr. Sollins. Later, Perrine filed suit on behalf of the Collinses and Mikey (Presbyterian case). In April 1979, Perrine and opposing counsel arrived at a settlement of $46,000. That settlement was approved by Curtis Collins.

To effectuate the settlement, Perrine asked Tabet to become Mikey's guardian for the limited purpose of reviewing the settlement. Tabet met with Perrine and Curtis Collins on April 17 to discuss the settlement. On May 4, Tabet was appointed guardian, and on May 7 the trial court held a hearing on the settlement that had been reached. The trial court asked the Collinses if they approved of the settlement, asked Tabet if the settlement was fair, and, having received affirmative answers, approved the settlement.

After the Presbyterian case was settled, Perrine filed suit in federal district court (federal court) against IHS on behalf of the Collinses and Mikey. The federal court dismissed the lawsuit, holding that the general release signed to settle the Presbyterian case released all potential defendants from liability, not just Presbyterian and Dr. Sollins. At that point, the Collinses retained new counsel, who appealed the dismissal on their behalf. The Tenth Circuit reversed the federal court's decision. *Collins v. United States*, 708 F.2d 499 (10th Cir.1983). On remand, the case went to trial and plaintiffs obtained a judgment in the amount of $3.9 million. The United States, through IHS, was held liable for forty percent of that amount and Dr. Sollins and Presbyterian for sixty percent. Because of the prior settlement with the latter parties and the fact that New Mexico had abolished the concept of joint and several liability, plaintiffs were unable to collect or make a claim for any part of Dr. Sollins' and Presbyterian's liability except the $46,000 that had already been paid.

The Collinses and Mikey then brought the suit giving rise to this appeal, seeking damages from Tabet and Perrine for wrongfully advising settlement of the Presbyterian case. The Collinses' personal claims were dismissed, leaving only Mikey's claims to be adjudicated. Following a jury trial in August 1986, the jury returned a verdict in favor of plaintiffs in the amount of $2,958,789. The jury assigned negligence in the following percentages: Perrine, fifty-four percent; Tabet, thirty-nine percent; and Curtis Collins, seven percent. In order to reach its verdict, the jury had to find that Presbyterian and Dr. Sollins committed malpractice, and that both defendants were also guilty of malpractice or negligence. On appeal, Perrine does not challenge the jury determination that medical malpractice was committed. He does, however, raise numerous other challenges to the jury's verdict and award of damages. We address each contention separately.

### PERRINE'S PERFORMANCE AS MIKEY'S ATTORNEY

Perrine contends there was no evidence supporting the jury's determination that he had committed malpractice. He argues that the evidence showed he made a good-faith decision to settle the case, based upon the following: the fact that plaintiffs had no resources with which to pursue discovery; the lack of an expert witness; the weakness of the claim against Presbyterian and Sollins; the strategy to settle this weaker case in order to obtain seed money for the stronger case against IHS; the quality of opposing counsel; and the "no negligence" vote of the Medical–Legal panel.

Perrine did testify concerning these factors at trial. However, Mikey presented

expert testimony that contradicted Perrine's claim that he had handled the case in a competent manner. Mikey's experts testified that a case as complicated as the Presbyterian case should not have been handled without sufficient resources to conduct discovery. Perrine admitted that he took no depositions, filed no requests for production or for admission, and submitted no interrogatories to defendants. Plaintiffs' experts strongly criticized this lack of discovery prior to settlement. Perrine failed to contact Dr. Saland, the physician who treated Mikey after the visits to Presbyterian and IHS; both of plaintiff's experts testified that this omission deprived Perrine of crucial information and a possible expert witness. In fact, in the trial of this case, Dr. Saland testified as a medical expert for plaintiffs.

Plaintiffs' experts also stated that Perrine had not made sufficient efforts to locate potential expert witnesses, and had not performed sufficient medical or legal research into the issues raised by the case. In Perrine's deposition and in his testimony under oath in a prior disciplinary board proceeding, he contradicted his claim (that the settlement was a strategic decision) by stating that the case against IHS was much weaker than the case against Presbyterian and Sollins and that no decision had been made to pursue the case against IHS at the time the first case was settled. In his earlier testimony, he also claimed that he settled the Presbyterian case reluctantly and thought it was a good case, contradicting his assertion at trial and on appeal that he thought the case was weak.

■ Given the testimony we have noted, we cannot hold as a matter of law that Perrine was not negligent in handling the Presbyterian case. A plaintiff in a legal malpractice case must establish, through expert testimony, that the attorney failed to use the skill, prudence, and diligence of an attorney of ordinary skill and capacity. *First Nat'l Bank of Clovis v. Diane, Inc.*, 102 N.M. 548, 698 P.2d 5 (Ct.App.1985). From the testimony, the jury could have readily found that Perrine settled the case without performing even the minimum level of discovery necessary in such a complex case. The jury could also have found that, in general, Perrine did not have sufficient information about the facts and law involved in this case when he decided to recommend settlement. Mikey's experts testified specifically that Perrine's performance did not meet the standard of an attorney practicing in Albuquerque in 1978 and 1979. We reiterate that on appeal we examine only the evidence supporting the jury's verdict, and ignore contrary evidence. *See Barngrover v. Estate of Barngrover*, 95 N.M. 42, 618 P.2d 386 (Ct. App.1980). Sufficient evidence was presented to show that Perrine's handling of the case was negligent.

■ Perrine also argues that the question of negligence does not matter, because plaintiffs failed to show that Mikey was damaged by that negligence. He contends plaintiff did not sufficiently prove that, absent the negligence, the settlement would have been greater or a larger jury verdict could have been obtained. Plaintiffs were successful, however, in establishing that Presbyterian and Dr. Sollins were negligent in the diagnosis and treatment administered. In addition, as noted in the discussion on remittitur below, plaintiffs presented evidence establishing the amount of Mikey's claim against Presbyterian and Dr. Sollins. The jury thus had evidence before it upon which to base its determination that Perrine's negligence deprived Mikey of a viable claim against Presbyterian and Dr. Sollins, and its determination of the amount of that claim. This was sufficient to prove the damages caused by Perrine's negligence. *See George v. Caton*, 93 N.M. 370, 600 P.2d 822 (Ct.App.1979) (plaintiff in legal malpractice case must prove he would have recovered judgment and amount of that judgment). It was not necessary, as Perrine appears to maintain, for plaintiffs to question opposing counsel in the Presbyterian case and obtain an admission that a higher settlement was possible.

For these reasons, we decline to reverse the jury's determination that Perrine committed malpractice in representing Mikey in the Presbyterian case.

## INDEPENDENT INTERVENING CAUSE

Perrine argues that his negligence, if any, was not a proximate cause of Mikey's damages. His argument is based on the fact that after the settlement of the Presbyterian case, and before Mikey obtained the judgment against IHS, tort law in New Mexico changed. At the time of settlement, Perrine contends, tort law in New Mexico was prefaced on the concept of joint and several liability. Under that liability concept, Mikey could have recovered all of his damages from IHS, including the damages caused by Presbyterian, because IHS was a joint tortfeasor.

Before Mikey obtained his verdict from the federal government, however, this court abolished the concept of joint and several liability. *See Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct.App.1982). Because of this change in the law, when Mikey obtained his verdict from IHS, he recovered only the amount for which the federal court found IHS liable. Before, he could have recovered all of his damages from IHS; after the change in law, he could no longer recover the amount for which Presbyterian and Sollins were liable. Thus, Perrine maintains, the change in law was an independent intervening cause that broke the chain of causation between his negligence and the damages resulting from that negligence.

■ The existence of an independent intervening cause is a question of fact for the jury to decide. *Harless v. Ewing*, 80 N.M. 149, 452 P.2d 483 (Ct.App.1969). Perrine presented his facts and argument on this issue to the jury, and the jury rejected his position. He is necessarily arguing, then, that the *Bartlett* case was an independent intervening cause as a matter of law. We disagree.

An independent intervening cause is a cause that interrupts the natural sequence of events and produces a *different* result that could not be reasonably foreseen. *Harless v. Ewing.* The reasonably foreseeable result of Perrine's negligence in this case was that Mikey would not be able to recover the full amount of damages caused

by Presbyterian and Dr. Sollins. The change in law produced exactly that result—Mikey was not able to recover the full amount of damages caused by Presbyterian and Dr. Sollins.

The Restatement of Torts addresses this point clearly. In Section 442B, the Restatement explains that where the negligent conduct of an actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability. Restatement (Second) of Torts § 442B (1965). In this case, Perrine's negligence created the risk that Mikey would not be able to recover the damages caused by Presbyterian and Dr. Sollins. The intervention of the change in law, which brought about that harm, does not relieve Perrine of liability.

Based on this discussion, the fact that, with hindsight, we can say that Mikey might have been able to recover the full amount of his damages from IHS, except for the change in law, does not transform the change of law into an independent intervening cause. Nor does it matter whether Perrine could have foreseen the change in law. Foreseeability does not mean that the precise hazard or exact consequences should have been foreseen. *Harless v. Ewing.* It was enough that a reasonable person could anticipate that Perrine's negligence would lead to the loss of Mikey's claim against Presbyterian and Dr. Sollins.

As an adjunct to this argument, Perrine argues that his negligence was not a proximate cause of Mikey's damages because even after settlement, Mikey still had a remedy available against IHS. This remedy, Perrine asserts, would have allowed recovery of the full amount of his damages. His contention is based on *Mitchell v. Transamerica Ins. Co.*, 551 S.W.2d 586 (Ky.App.1977). In *Mitchell*, the plaintiffs were injured in an auto accident and retained an attorney to file suit against the other driver. The attorney failed to file suit before the statute of limitations expired. Plaintiffs then retained another at-

torney, who filed suit in an adjoining state with a longer statute of limitations. Plaintiffs settled their suit against the other driver, and then sued their first attorney. The court held they had not proved that the first attorney's malpractice had cost them anything, because they were still able to bring a lawsuit against the other driver.

■ The difference between *Mitchell* and this case is apparent. In that case, plaintiffs were able to assert the same cause of action against the same defendant under the initial lawsuit. In this case, on the other hand, the claim remaining after settlement was against an entirely different defendant, for entirely different negligent acts. Adopting Perrine's contention would be equivalent to adopting a rule that when an attorney's malpractice deprives a client of a claim against one defendant, the client can show no damage until the client exhausts claims against every potential defendant in the case. We decline to adopt such a rule. *See Winter v. Brown,* 365 A.2d 381 (D.C.App.1976) (plaintiff's claims against hospital were different from those against doctor; attorney's negligence deprived plaintiff of claims against hospital; plaintiff not required to exhaust claims against doctor before asserting malpractice claim against attorney).

In sum, we hold that the change in law abolishing joint and several liability was not an independent intervening cause and that the jury properly determined that Perrine's negligence was a proximate cause of Mikey's damages.

## FINALITY OF SETTLEMENT

■ Perrine contends that plaintiffs should not be permitted to challenge his conduct in negotiating and approving the settlement. To do so, he claims, would undermine the policy of the judicial system to encourage settlement and to treat settlements as final. In effect, Perrine is arguing that Mikey's malpractice claim is a collateral attack on the settlement reached in the Presbyterian case and should not be allowed. This court answered a similar contention in *Rodriguez v. Horton,* 95 N.M. 356, 622 P.2d 261 (Ct.App.1980). In that case, we held that in a malpractice

action alleging the negligence of an attorney in settling a claim for a small amount, the reasonableness of the settlement must necessarily be examined. Malpractice actions are not attempts to set aside the prior settlement, but are entirely separate actions to recover compensation for the negligent performance of duties. Therefore, the doctrine of finality of settlement is not involved in such actions. *Cf. id.; Cook v. Connolly,* 366 N.W.2d 287 (Minn.1985) (suit for negligent settlement allowed without first requiring that settlement be set aside).

## AMOUNT OF VERDICT

Perrine argues that the amount of damages awarded by the jury was not supported by the evidence presented at trial. He maintains that the damages necessarily had to be based on the information that was or could have been available in 1979, not on the information available at the time this case was tried. The only evidence concerning Mikey's life expectancy in 1979, Perrine claims, was that he would live a maximum of five to seven more years. Given that life expectancy, he contends the maximum amount of special damages that could have been expected in 1979 was between $1,000,000 and $1,200,000. In addition, Perrine argues that the small likelihood plaintiffs could have obtained a judgment in the Presbyterian case must be taken into account when determining damages. He also argues that the verdict obtained in the federal trial should be offset against the damages in this case, to avoid duplication of damages.

■ We agree with Perrine that the proper measure of damages is the amount of the judgment that could have been recovered, but for his negligence, in the original lawsuit. *Cf. George v. Caton* (plaintiff in legal malpractice case must prove by a preponderance of the evidence that judgment would have been recovered absent attorney's negligence, and the amount of that judgment). The damages should be calculated based on the information reasonably available to the parties in 1979. It is not clear that the only evidence available to

the jury indicated a life expectancy for Mikey of five to seven years in 1979. For example, Perrine testified he understood that Mikey would live from five to twelve years. Also, plaintiffs' expert, Dr. Seltz, testified that the tables on which the short life expectancy was based are unreliable. For purposes of deciding this issue, however, we will accept the maximum specific life span evidence to which the jury was exposed—Perrine's testimony. Using twelve years as the expected life span, and plaintiffs' Exhibit 15 as the guideline for medical expenses, we conclude that the jury could have awarded approximately $775,000 in medical expenses. Lost wages amounted to approximately $670,000. Thus, special damages totalled $1,445,000. The question before us is whether the additional award of approximately $1,500,000 was so excessive as to shock the conscience of this court. See Grammer v. Kohlhaas Tank & Equip. Co., 93 N.M. 685, 604 P.2d 823 (Ct.App.1979) (in personal injury cases, jury award will be upheld unless amount awarded is so grossly out of proportion to injury received as to shock the conscience). We hold that it was not.

The elements of damage, other than special damages, on which the jury was instructed, included the following: the nature, extent and duration of the injury, including disfigurement; pain and suffering; loss of enjoyment of life; and shortened life opportunity. Perrine did not object to this instruction. In 1979, it was clear that Mikey's disablement was permanent and profound. He was left severely brain damaged, with a mental age of approximately three months. The evidence in this case showed he could not hold his head up, or swallow, or engage in purposeful movement of his limbs. He could not feed himself, or wash himself, or eat any foods except pureed foods. He must undergo periodic, painful dental work on his gums. It is almost certain that he will never walk, run, speak, or enjoy any but the simplest of pleasures. His life expectancy, as calculated in 1979, had been shortened from over sixty or seventy years to twelve years. Given these facts, we cannot say that the award of approximately $1,500,000 was ex-

cessive as a matter of law. Cases decided in several jurisdictions before 1979 upheld similar or greater amounts of damages for analogous injuries. See, e.g., Hooks v. Washington Sheraton Corp., 578 F.2d 313 (D.C.Cir.1977); Wry v. Dial, 18 Ariz.App. 503, 503 P.2d 979 (1972); Rodriguez v. McDonnell Douglas Corp., 87 Cal.App.3d 626, 151 Cal.Rptr. 399 (1978); Niles v. City of San Rafael, 42 Cal.App.3d 230, 116 Cal. Rptr. 733 (1974); General Elec. Co. v. Bush, 88 Nev. 360, 498 P.2d 366 (1972).

Citing no authority for the proposition, Perrine asserts that the total amount of damages should be reduced by a percentage factor reflecting the chances of winning the Presbyterian case. The jury addressed this issue when it determined that Perrine had committed malpractice. As part of that determination, the jury necessarily had to decide that if not for Perrine's negligence, Mikey would have had a good chance of winning the lawsuit. See George v. Caton (plaintiff must prove by a preponderance of the evidence that judgment would have been recovered). The only issue regarding damages in a case such as this one is the amount of the judgment that would have been recovered; the percentage chances of success do not enter into the equation at this stage of the case. Cf. id. We do not, therefore, accept Perrine's unsupported argument that the jury award should be reduced to account for the assertedly small chance of winning the lawsuit.

■ Perrine's contention that the verdict obtained in the federal case overlaps the verdict in this case is incorrect. In essence, he is arguing that the $2.9 million verdict in this case was intended to compensate Mikey for all the damages he has suffered and will suffer in his lifetime. That is not so. The verdict in this case was intended to compensate him for the claim he lost in the Presbyterian case and was based on information available in 1979. By the time the federal trial against IHS was held, more information was available about Mikey's lifespan and the total amount of damages. For example, Dr. Seltz, plaintiffs' medical expert in this case, testified

in the federal case also. He testified that Mikey could be expected to live into his twenties. Based on that expected life span, Mikey's future medical expenses alone, in the federal case, were almost a million dollars more than the figure we have used to calculate the maximum amount of special damages that could have been expected in 1979. (Exhibit 15.) Therefore, the potential damages that the jury found Mikey lost in 1979 were different from the damages he was awarded as a result of the IHS lawsuit. Under this kind of analysis, we cannot say that the two damage awards overlap; the verdicts cannot be offset against each other, as Perrine argues.

## CONCLUSION

Many of our state's citizens, confronted by what they perceive as a growing complexity in our legal system, both in their personal and business affairs, have understandably and necessarily sought out assistance from the legal profession. We are thus mindful that we render this decision at a time when there is a prevailing awareness that the law generally, and the legal profession particularly, continue to affect almost every conceivable aspect of our daily lives. At such a time, when the public has found itself progressively dependent on attorneys and our court system, should we not expect that same public to cry out for protection from those who have been adjudicated by their peers as having fallen below that standard by which we measure their conduct in dispensing legal services? Were we to protect or immunize lawyers from the inevitable consequence of their actions or inactions, we would most assuredly undermine the public trust and confidence that the legal profession certainly must desire and should strive to attain at all costs.

Only after considerable thought and reflection has this court come to its conclusions concerning each of the significant issues we have been called upon to address. We have based our resolution of this appeal on what we deem to be sound policy considerations for the public good and with a sincere appreciation and hope that justice will have been served. Based on our analysis of this appeal, we affirm the jury's verdict against Perrine. Costs are assessed against Perrine.

IT IS SO ORDERED.

BIVINS, C.J., and DONNELLY, J., concur.