**Laura BARTO, individually and as personal representative of the Estate of Floyd Barto, deceased, Plaintiff,**

v.

**ARMSTRONG WORLD INDUS., INC., Eagle–Picher Indus., Inc., Owens–Corning Fiberglas Corp., Combustion Engineering, Inc., National Gypsum Co., Inc., Pittsburgh–Corning Corp., A P Green Refractories Co., United States Gypsum Co., Celotex Corp., Carey Canada, Inc., GAF Corp., Certainteed Corp., Defendants.**

**Civil No. 89–932 BB.**

United States District Court,
D. New Mexico.

April 25, 1996.

Whitney C. Buchanan, Albuquerque, NM, Ann Kimmel Ritter, Barnwell, SC, Kimberly S. Vroon, Charleston, SC, for Plaintiff.

Mark S. Jaffe, Albuquerque, NM, for Defendants.

## MEMORANDUM OPINION

BLACK, District Judge.

This Opinion addresses Defendant Owens–Corning Fiberglas' ("OCF") November 15, 1990 motion for summary judgment on product identification (Doc. 254). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that OCF's motion is not well taken and should be DENIED.

### I. Facts and Procedural History

Plaintiff Laura Barto ("Plaintiff") and her decedent Floyd Barto ("Decedent") filed this civil action in 1989 alleging that Decedent developed asbestos-related diseases as a result of his occupational exposure to asbestos products manufactured by OCF and others. OCF filed a motion for summary judgment on the issue of product identification on November 15, 1990. In July 1991, a Multi–District Litigation Panel transferred this action and several other asbestos-related cases to Judge Charles R. Weiner of the Eastern District of Pennsylvania. By Order of July 18, 1994, Judge Weiner severed and retained the claims for punitive damages in this and other cases. Judge Weiner then remanded the remainder of the present matter to this Court for further proceedings. Thus, OCF's November 15, 1990 motion for summary judgment is now before the Court.

### II. Analysis

■ OCF asserts that it is entitled to summary judgment because Plaintiff has produced insufficient evidence that Decedent was exposed to any asbestos product manufactured by OCF. Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.1995). According to Federal Rule of Civil Procedure 56(c), the movant bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). On such a showing, "[a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Viewing the evidence in the light most favorable to the non-movant, there is no issue for trial unless the Court finds sufficient evidence to support a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Plaintiff's action is one of strict products liability. In *Brooks v. Beech Aircraft Corp.*, 120 N.M. 372, 902 P.2d 54 (1995), the New Mexico Supreme Court recently noted that strict products liability is especially appropriate to redress injuries caused by unreasonably dangerous products such as asbestos.

> The burden of illness from dangerous products such as asbestos should be placed upon those who profit from its production and, more generally, upon society at large, which reaps the benefits of the various products our economy manufactures. That burden should not be imposed exclusively on the innocent victim.

*Id.* at 377, 902 P.2d at 59 (*quoting Beshada v. Johns–Manville Prods. Corp.*, 90 N.J. 191, 447 A.2d 539, 549 (1982)). However, the *Brooks* court stressed that the burden sought to be eliminated by imposing strict liability is "the practical [one] of establishing the failure to exercise due care." *Id.* The burden of proving that the defendant's product caused the plaintiff's injury remains on the plaintiff even in a products liability action. *See id.* at 379, 902 P.2d at 61 (imposing "strict liability against manufacturers for injuries *caused by* defective product design") (emphasis added). Thus, to prevail on her claims Plaintiff must produce evidence, viewed in the light most favorable to her position, sufficient to permit a reasonable juror to find in her favor on the issue of causation. *Martin v. Unit Rig & Equip. Co.*, 715 F.2d 1434, 1439 (10th Cir. 1983) (under New Mexico law proximate cause is essential element of claims in negligence and strict liability).

■ "[T]he general tort law definition of proximate cause is applicable in products liability cases," except those premised on a failure to warn. N.M.U.J.I. 13–1424, Committee Comment. The New Mexico Uniform Jury Instructions state in pertinent part that

> [t]he proximate cause of an injury is that which, in a natural and continuous sequence ... produces the injury and without which the injury would not have occurred. It need not be the only cause, nor the last nor nearest cause. It is sufficient if it occurs with some other cause, acting at the same time, which, in combination with it, causes the injury.

N.M.U.J.I. 13–1424. Proximate causation requires a plaintiff to demonstrate that the defendant's act or product "actually aided in producing the injury." *Clay v. Ferrellgas, Inc.*, 114 N.M. 333, 337, 838 P.2d 487, 491 (Ct.App.1992), *rev'd on other grounds*, 118 N.M. 266, 881 P.2d 11 (1994).

OCF's "product identification" argument is grounded on Plaintiff's asserted failure to show that OCF's products actually caused Decedent's illnesses. Thus, the narrow issue before the Court is whether Plaintiff has produced evidence that Decedent was sufficiently exposed to *the asbestos products of OCF*.

Plaintiff principally relies on Decedent's own testimony to demonstrate that Decedent was sufficiently exposed to OCF's asbestos products. Before the Court may consider the sufficiency of Decedent's testimony, however, it must first address OCF's argument that this evidence is inadmissible. Specifically, OCF argues that the Court should not consider Decedent's deposition testimony regarding product identification because at the time he gave this testimony, Decedent was heavily medicated, the medication interfered with Decedent's memory, and Decedent therefore lacked "capacity" to testify under Federal Rule of Evidence 602.

■ Federal Rule of Evidence 602 states in pertinent part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of this matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed.R.Evid. 602; *United States v. Bedonie*, 913 F.2d 782, 799 (10th Cir.1990), *cert. denied*, 501 U.S. 1253, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991). "Absolute certainty either of observation or of recollection is not required to establish personal knowledge. All that is required is an opportunity to observe and a belief that what is related depicts the perception." Michael H. Graham, *Handbook of Federal Evidence* § 602.2 (3d ed.1991). Also, "[h]abitual use of intoxicants or drug addiction does not by itself make a witness incompetent to testify. Even the fact that a witness testifies while under the influence is not disqualifying; competency is determined by an assessment of minimum credibility." *Id.* § 601.3.

■ To determine minimum credibility, the Court must consider whether "a reasonable juror could ... put any credence in the witness's testimony." *Id.* § 601.2. Graham elaborates:

> Minimum credibility should be evaluated in light of the need for the witness' testimony as well as the factors listed in Rule 403. As McCormick states: '[T]he ... test is whether the witness has intelligence enough to make it worthwhile to hear him at all.... Is his capacity to observe, remember, and recount, such that he can probably bring added knowledge of the facts? ... [T]he remedy of excluding ... a witness [of minimum credibility], who may be the only person available who knows the facts, seems inept and primitive. Though the tribunal is unskilled, and the testimony is difficult to weigh, it is still better to let the evidence come in for what it is worth, with cautionary instructions.'

*Id.* (quoting Charles T. McCormick, *McCormick on Evidence* § 62 at 156 (3d ed. 1984)). Thus, in the context of Rule 602, "[t]estimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir.1990).

Applying these standards, the Sixth Circuit in *Hickey* considered whether the district court abused its discretion in admitting

the testimony of a "self-confessed cocaine addict." *Id.* at 903. The witness' testimony suffered from numerous deficiencies, including "claimed lack of memory, . . . uncertainty as to details, and several inconsistencies." *Id.* Nevertheless, the Sixth Circuit affirmed the district court's admission of this witness' testimony, stating that "[d]espite the fact that [the witness'] testimony may have been, in large part, unbelievable to some and in spite of the possibility that his perception was sometimes impaired, a reasonable or rational juror could believe that [the witness] . . . perceived the course of events to which [he] testified." *Id.* at 904.

■ OCF first attempts to rely on Decedent's own deposition testimony to demonstrate that Decedent lacked any personal knowledge of who manufactured the asbestos products with which he worked. However, the very testimony on which OCF relies actually establishes that at the time of his deposition, Decedent did have some personal knowledge regarding this issue. Decedent testified in pertinent part as follows:

Q. Okay. Now, my impression is, and I think I'm right, that you really can't remember right now what products you used at which jobs throughout your career. Am I accurate when I say that?

A. No, I can't remember them all at this point, no.

Q. Can you remember any of them at this point?

A. The products?

Q. It's a fact, isn't it, that you really can't connect up which product, which asbestos product you used with which job you were at? You can't do that, can you, without the use of that book?

A. Well, if I had time to think, yeah.

Q. Right now, can you do it?

A. I think so.

OCF's Mem.Supp.Mot.Summ.J.Ex. A at 45–46.

Arguing that Decedent's medicated state decisively impaired his personal knowledge, OCF next points to various portions of Decedent's testimony in which Decedent acknowledged that the medication he was taking adversely affected his memory. *See, e.g.,*

OCF's Mem.Supp.Mot.Summ.J.Prod.Identification Ex. A. at 9 ("I'm on a heavy dose of morphine. It throws me out of gear. Sometimes my memory goes to heck. Sometimes it doesn't."), 52 ("Me taking this morphine, me screwed up with this, and this other stuff, 'chickadene.' It's killing my brain. I'm screwed up. I think I'm at a disadvantage at this point, to put it bluntly. And it's really interfering with my memory."). According to OCF, uncertainties and inconsistencies in Decedent's testimony also indicate that the medication Decedent was taking excessively impaired his memory.

Notwithstanding OCF's arguments to the contrary, that Decedent testified under the influence of medication does not disqualify him *per se.* Rather, "competency to testify is determined by an assessment of minimum credibility." Graham, *supra,* § 601.2. While Decedent acknowledged that because of his medication, his memory was sometimes impaired, he also stated that at other times his memory remained intact. OCF's Mem.Supp. Mot.Summ.J.Prod. Identification Ex. A. at 9. Furthermore, while some of the excerpts before the Court indicate that Decedent was confused, *see, e.g.,* OCF's Mem.Supp.Mot. Summ.J.Prod. Identification Ex. A. at 74, other excerpts show that he was sufficiently aware, and his memory was sufficiently intact, to allow a reasonable juror to place some credence in his testimony. *See, e.g.,* OCF's Reply Br.Supp.Mot.Summ.J.Prod. Identification Ex. A at 58 l. 23 to 59 l. 6, 61 ll. 8–13. Also, that Decedent did not express himself in terms of absolute certainty does not invalidate his testimony that he could remember which asbestos products he used at different jobs and thus had personal knowledge regarding this issue. *See* Graham, *supra,* § 602.2.

Finally, Decedent appears to be "the only person who [knew] the facts" of his alleged exposure to OCF asbestos products. Thus, his testimony is crucial to Plaintiff's case, and this fact reinforces the Court's conclusion that "it is still better to let [this] evidence come in for what it is worth, with cautionary instructions [to the fact finder]." Graham, *supra,* § 601.2.

In conclusion, Decedent's medicated state and his sometimes uncertain testimony may raise some questions regarding his credibility. However, such questions go to the weight and not the admissibility of his testimony. The Court finds that at the time of his deposition, Decedent had sufficient personal knowledge of who manufactured the asbestos products with which he worked, and Decedent's testimony on this issue is admissible. *See also United States v. Blankenship,* 923 F.2d 1110, 1116 (5th Cir.), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991) (court properly admitted testimony of drug addict who had taken drugs during period about which she testified and who occasionally hallucinated); *Hickey,* 917 F.2d at 904 (court properly admitted testimony of drug addict whose testimony contained uncertainties and inconsistencies); *United States v. Van Meerbeke,* 548 F.2d 415, 418–19 (2d Cir.1976), *cert. denied,* 430 U.S. 974, 97 S.Ct. 1663, 52 L.Ed.2d 368 (1977) (court properly admitted testimony of witness who took opium during trial and experienced "minor hallucinations").

■ Having determined that Decedent's deposition testimony is admissible, the Court must next consider whether this testimony creates a genuine issue of material fact regarding whether asbestos products manufactured by OCF caused Decedent's asbestos-related illnesses. As noted previously, to prevail on the issue of causation, Plaintiff must prove that OCF's products "actually aided in producing [Decedent's] injury." *Clay,* 114 N.M. at 337, 838 P.2d at 491. Several courts have held that "the mere proof that the plaintiff and a certain asbestos product are at the [workplace] at the same time, without more, does not prove exposure to that product." *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1162 (4th Cir. 1986); *Blair v. Eagle–Picher Indus.,* 962 F.2d 1492, 1496 (10th Cir.), *cert. denied sub nom. Williams v. Eagle–Picher Indus.,* 506 U.S. 974, 113 S.Ct. 464, 121 L.Ed.2d 372 (1992); *cf. Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1483–86 (11th Cir.1985) (rejecting plaintiff's argument that court should apply rebuttable presumption of exposure once plaintiff demonstrated that defendant's asbestos products were used at job-site while plaintiff was employed at jobsite). Rather, Plaintiff "must come forward with some evidence to establish the likelihood of frequent or sustained exposure to [OCF's asbestos-containing] product." *Huber v. Armstrong World Indus.,* —— F.Supp. —— [1996 WL 391502] (D.N.M.1996) (Conway, C.J.).

This is not a case in which the plaintiff has attempted to prove causation through inferences drawn from indirect evidence. *See, e.g., Blair,* 962 F.2d at 1496–97 (plaintiffs attempted to prove causation indirectly rather than through their own testimony identifying defendants' asbestos products); *Dillon v. Fibreboard Corp.,* 919 F.2d 1488, 1491–92 (10th Cir.1990) (same); *Huber,* —— F.Supp. at —— (same). Rather, Plaintiff's Decedent himself testified that he was exposed to specific asbestos products that OCF manufactured. Decedent testified in relevant part as follows:

Q. Okay. The next entry again is for Stilwell Heating Company on your Exhibit 1.... [I]t says there that you worked for Stilwell from 1952 to 1955 and from 1960 to 1963 and 1968 and 1979. Do you see that?

A. Yeah.

Q. Was I accurate in all those times?

A. I'd say fairly close.

Q. All right.... It's true that you don't remember working in or around any asbestos product manufactured by Owens–Corning Fiberglas in any of those jobs, do you?

A. Oh, yes, I remember a lot of Owens–Corning stuff. That was the big one there. Owens–Corning, Johns–Manville. Those are your big babies.

Q. Yes, but first I want you to tell me which job you worked at in which there was an Owens–Corning product present that you came in contact with.

A. I'm flashing through my mind these different things, you know.

Q. Okay. Okay, Mr. Barto?

A. I think we worked at Hurley High School.

.    .    .    .    .

Q. Okay. And which product did you come in contact with at Hurley High School that was manufactured by Owens–Corning Fiberglas?

A. There was some more, too. There was—there was Kaylo on that pipe, I guess; Kaylo.

Q. Okay, and what else? Was there anything else?

A. And Owens–Corning cement.

Pl.'s Resp. OCF's Mot.Summ.J.Prod.Identification Ex. A at 56, Ex. B. at 58–59.

OCF observes that in subsequent testimony Decedent qualified these responses. Specifically, Decedent indicated that at Hurley High School, he did not see Kaylo pipe covering taken from boxes and applied to the pipes in question, and that only the boxes, and not the pipe covering, were marked with the name "Kaylo." OCF's Reply Br. Supp.Mot.Summ.J.Prod. Identification Ex. A at 61–62. He also testified that he did not have to drill into the alleged Kaylo pipe covering but only "[i]n the breaching and stuff like that," and that a fan "expel[led] the dust and everything with it." *Id.* at 62. Regarding the alleged Owens–Corning cement, Decedent testified as follows:

Q. And where did you put it on?

A. On furnaces.

Q. At the Hurley High School job?

A. No, different jobs. Residential, commercial jobs.

OCF's Reply Br.Supp.Mot.Summ.J.Prod. Identification Ex. B at 63. OCF contends that this testimony contradicts Decedent's earlier testimony that he was exposed to

OCF's Kaylo pipe covering and cement at the Hurley High School jobsite.

The Court is not convinced that Decedent's qualifications of his testimony are as contradictory as OCF would argue.[1] Furthermore, notwithstanding these weaknesses, the Court finds that Decedent's deposition testimony constitutes some evidence to establish the likelihood of frequent or sustained exposure to OCF's Kaylo pipe covering and cement. *Huber,* Civ. 89–904 JC, slip op. at 5. A fact finder could therefore reasonably conclude that OCF's products actually aided in producing Decedent's injury, *Clay,* 114 N.M. at 337, 838 P.2d at 491, and the Court will deny OCF's motion for summary judgment on the issue of product identification.

---

1. For example, Decedent's testimony regarding OCF cement may not be as contradictory as it first appears. At Decedent's deposition, when defense counsel asked Decedent, "[W]hich product did you come in contact with at Hurley High School that was manufactured by Owens–Corning Fiberglas?," Decedent responded, "There was some more, too," before he added that he had been exposed to OCF's Kaylo pipe covering and cement. *See* Pl.'s Resp. OCF's Mot. Summ.J.Prod. Identification Ex. B. at 58–59. While Decedent's statement that "[t]here was some more" is somewhat obscure, Decedent could have been attempting to indicate that he was exposed to OCF asbestos products at jobsites in addition to the Hurley High School site. Having mentioned additional sites, Decedent might not have limited his subsequent answers about products to which he was exposed to those he saw at Hurley High School.