902 P.2d 1033

Jeffrey L. HINGER, David Cupps, and George B. Valencia, Plaintiffs–Appellees/Cross–Appellants,

v.

PARKER & PARSLEY PETROLEUM CO. and Evergreen Resources, Inc., Defendants–Appellants/Cross–Appellees.

No. 14621.

Court of Appeals of New Mexico.

May 31, 1995.

Certiorari Denied Aug. 24, 1995.

434

. Jerrald J. Roehl, Corbin P. Hildebrandt, Mark E. Komer, The Roehl Law Firm, P.C., Albuquerque, for plaintiffs-appellees/cross-appellants.

W.R. Logan, Civerolo, Wolf, Gralow & Hill, P.A., Albuquerque, Carl J. Butkus, Butkus & Reimer, P.C., Albuquerque, for defendants-appellants/cross-appellees.

## OPINION

BOSSON, Judge.

On September 20, 1990, a natural gas well (Rosa 282) exploded in the San Juan Basin severely burning Plaintiffs, who were employees of a subcontractor working at the wellsite. Plaintiffs collected workers' compensation from their employer and filed a complaint for personal injuries against Parker & Parsley Petroleum Company (Parker) and Evergreen Resources, Incorporated (Evergreen), the general partners that leased and operated. the well. Plaintiffs also sued other subcontractors but settled with them prior to trial. A jury awarded Plaintiffs substantial compensatory damages against Parker and Evergreen and punitive damages against Parker.· On appeal, Defendants raise various challenges to the theories of negligence presented to the jury, and Parker challenges the submission to the jury of punitive damages. Defendants also question the applicability of strict liability to this case under *Saiz v. Belen School District,* 113 N.M. 387, 827 P.2d 102 (1992). Plaintiffs cross-appeal from a trial court decision reducing the verdict by the amount of their settlement with the subcontractors. In post-trial proceedings, Defendants argued to the trial court that *Saiz* had been applied to the case, over their objection, and therefore joint and several liability and a right to indemnification or contribution necessarily applied. The trial court ruled for Defendants based on the court's view that *Saiz* applied. Our discussion of *Saiz* and Defendants' issues on appeal is dispositive of our resolution of the cross-appeal. We affirm the verdict for Plaintiffs and reverse the trial court on the cross-appeal.

*FACTS*

We state the facts in the light most favorable to Plaintiffs and ignore many of the facts, the conflicting evidence, and the reasons to ignore Plaintiffs' evidence on which Defendants rely at length in their briefs. *See Clovis Nat'l Bank v. Harmon*, 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984).

The Rosa 282 well is located on federal land in Rio Arriba County at a site commonly referred to as the Rosa Unit. In March 1990, Evergreen acquired the rights to drill on the Rosa Unit and thereafter prepared predrilling estimates regarding the amount of cubic feet of gas expected. Evergreen then solicited Parker as a general partner in the development of the well, and the two companies entered into a joint operating agreement naming Parker "operator" of the project and Evergreen "non-operator" or "consultant."

One of Parker's first initiatives was to appoint Buddy Knight "pointman" of the project. Knight was Parker's division operations manager. As pointman, Knight managed and had the right to control the operations in the Rosa Unit. Parker contracted with Drew Bates, a local New Mexico consultant, for his knowledge of the gas formation and his contacts with local contractors. Bates, in turn, hired Sam Billington to act as "company man" for Parker. As company man, Billington exercised supervision on behalf of Parker over contractors at the work site. Plaintiffs worked for Basin Well Servicing, one of the contractors.

The Rosa 282 well was drilled in August of 1990. As with other wells, two steel pipes were inserted into the drilled hole, one inside the other. The outside pipe is the casing and the inner pipe is the tubing. The space between the two pipes is known as the annulus. At ground level, the casing and tubing are enclosed by two encasements, the casing spool and the tubing spool. The tubing passes first through the casing spool and then the tubing spool. Inside the tubing spool a circular piece of rubber (the wraparound donut) is inserted between the casing and the tubing to prevent gas from escaping through the annulus. On top of the tubing spool, a series of pipelines connect to the tubing which is collectively referred to as the "Christmas tree." The Christmas tree distributes the gas to storage and refining facilities.

Based on Evergreen's predrilling estimates of anticipated gas, Parker selected the well-head equipment for Rosa 282. However, the estimates proved considerably lower than the amount of gas actually realized, and therefore Parker had to replace the wraparound donut and the Christmas tree with larger, higher-pressure equipment. According to evidence presented, removal of the wrap-around donut in a functioning well is potentially very dangerous and requires meticulous care and planning. If flammable gas escapes through the annulus, there is the distinct possibility of an explosion or a "blowout."

Experienced operators often utilize a piece of equipment known as a blow-out preventer (BOP) when removing the wrap-around donut. The BOP replaces the Christmas tree and attaches to the tubing spool. The wraparound donut is then pulled out and replaced through the BOP. If gas leaks, the BOP can be manually closed to prevent a blow-out. The BOP is an effective, well-known safety device for working on gas wells like the Rosa 282 and Parker made one available on a neighboring well.

However, Parker did not require use of the BOP. Billington, Parker's company man, decided not to use the BOP but chose instead to change the wrap-around donut by another technique. Billington ordered water pumped into the annulus through a valve on the tubing spool. In theory, the weight of the water prevents the gas from escaping and allows the wrap-around donut to be safely removed. After pumping water into the annulus, Billington declared the well safe and ordered Plaintiffs to replace the equipment. Plaintiffs removed the Christmas tree and the wrap-around donut. Water immediately began shooting from the annulus. Plaintiffs testified that they were frightened and ran away from the well because they were afraid of a blow-out. There was evidence that Billington then ordered Plaintiffs back to the well. Plaintiffs lowered the wrap-around do-

nut in an effort to seal the annulus but there was too much pressure. The water gave way to gas which exploded into flames severely injuring the three Plaintiffs.

Plaintiffs sued Parker, Evergreen, and four subcontractors. All except Parker and Evergreen settled their claims for a total of the $2.2 million. Plaintiffs presented the jury with three theories of negligence against Parker and Evergreen: (1) negligent failure to provide a safe place to work; (2) negligent failure to exercise retained control over the wellsite in a responsible manner; and (3) per se negligent failure to comply with certain government regulations pertaining to gas well safety. Plaintiffs also argued for strict liability under *Saiz* arising from an inherently dangerous activity. Plaintiffs sought punitive damages against Parker and Evergreen but on motion for directed verdict the district court dismissed the punitive damages claim against Evergreen.

The jury returned a verdict for Plaintiffs finding Parker 90% at fault, Evergreen 9% at fault, and Billington 1% at fault. The jury found no fault in Plaintiffs or the other contractors. The jury awarded compensatory damages to Plaintiff Cupps in the amount of $4,477,549; Plaintiff Hinger in the amount of $342,936; and Plaintiff Valencia in the amount of $304,167. The jury awarded $5,000,000 in punitive damages to Cupps and $1,000,000 in punitive damages each to Hinger and Valencia. In an amended judgment the court reduced the jury verdict by the amount of the $2.2 million pretrial settlement.

## SAIZ LIABILITY

■ Defendants object that (1) there was insufficient evidence of an inherently dangerous activity to justify strict liability under *Saiz*; (2) *Saiz* should not be applied retroactively to the facts of this lawsuit; and (3) Plaintiffs are confined to their remedies under workers' compensation because an employee of an independent contractor cannot sue the owner/operator of the project for inherently dangerous activity under Restatement (Second) of Torts, Sections 416 and 427 (1965), which is the theoretical foundation for *Saiz. See New Mexico Elec. Serv. Co. v. Montanez,* 89 N.M. 278, 281, 551 P.2d 634,

637 (1976). Although Plaintiffs meet each of these objections on their merits, they emphasize that this case was presented to the jury on the basis of ordinary care and negligence, and not on strict liability. Plaintiffs argue, therefore, that these objections to *Saiz* are purely academic and need not be answered on appeal. We agree.

■ In *Saiz*, our Supreme Court applied Restatement (Second) of Torts Sections 416 and 427 and held that an employer of an independent contractor, engaged in activity which is "inherently dangerous," has a nondelegable duty to ensure that reasonable precautions are taken by contractors to prevent injury to third parties. An employer who breaches this nondelegable duty must answer under strict liability, not mere negligence; reasonable care by the employer is no defense. *Saiz* liability is not vicarious; the employer is liable for 100% of the damages proximately caused regardless of whether the individual contractor may also be at fault. *Saiz,* 113 N.M. at 400, 827 P.2d at 115. *Saiz* further instructs the trial court to decide, as a matter of law, whether the evidence proves that the activity in question is "inherently dangerous." If so, the jury is to be given special interrogatories asking (1) what precautions would be deemed reasonably necessary by one to whom knowledge of all the circumstances is attributed (whether or not the particular defendant had or could have had such knowledge through the exercise of reasonable care); and (2) whether the absence of a necessary precaution was a proximate cause of injury. *Id.* at 396, 827 P.2d at 111. If the jury answers to both questions affirmatively, then the court issues judgment against the employer for 100% of the damages based on joint and several liability. *See id.*

Contrary to *Saiz*, Plaintiffs presented their case to the jury against Parker and Evergreen on theories of negligence, not strict liability. The verdict form asked the jury to compare the negligence, if any, of each Defendant, with the negligence, if any, of each of the several contractors, and with the negligence, if any, of the individual Plaintiffs. The jury did so, finding the Defendants 99% negligent, Plaintiffs 0% negligent, and Bill-

ington, an employee of one contractor, 1% negligent. The court then merged that verdict into a judgment against Parker and Evergreen for 99% of the damages. Plaintiffs made no effort to recover against Defendants, jointly and severally, for 100% of the damages, as they would have been authorized to do had they requested a judgment in strict liability under *Saiz*.

■ In addition to the verdict, we note the conspicuous absence from the jury instructions of at least one of the hallmarks of a strict liability lawsuit: liability without negligence. Under strict products liability, which the Supreme Court in *Saiz* described as "[t]he doctrine with the proper fit," 113 N.M. at 399, 827 P.2d at 114, suppliers of goods are absolutely liable for defects which pose an unreasonable risk of injury. In other words, reasonable care on the part of the supplier is no defense. The jury is instructed that "you are not to consider the reasonableness of acts or omissions of the supplier." SCRA 1986, 13–1407 (Repl.1991) (strict products liability; unreasonable risk of injury). The supplier is strictly liable "even though all possible care has been used by the supplier in putting the product on the market." SCRA 1986, 13–1406 (strict products liability; care not an issue). As stated in *Saiz*: "[L]iability is dependent on neither the lack of care taken by the contractor nor the lack of care taken by the employer to ensure that the contractor takes necessary precautions." *Saiz*, 113 N.M. at 395, 827 P.2d at 110. The standard which *Saiz* imposes upon the employer has been further analyzed:

> The test for liability is not what a reasonable person would have done based on what that person knew or reasonably should have known at the time of commencing the work. The test is what a reasonable person would have done had the person been bestowed with full knowledge, even though such full knowledge was unachievable by a reasonable person. [It is] [f]rom the perspective of an all-knowing, reasonably prudent person.... It is irrelevant that a reasonably prudent person who lacks complete knowledge may not reasonably anticipate the peculiar risk,

and thus would not ensure that the independent contractor takes the precaution.

Jane Marshall Gagne, *Tort Law—New Mexico Imposes Strict Liability on a Private Employer of an Independent Contractor for Harm From Dangerous Work, but Bestows Immunity on a Government Employer: Saiz v. Belen School District*, 23 N.M.L.Rev. 399, 406 (1993) (footnotes omitted).

In this case, the jury instructions did not hold Defendants to an absolute standard of "an all-knowing, reasonably prudent person" or one to whom knowledge of all the circumstances is attributed. Defendants presented an instruction based on "comparative negligence." Defendants were free to argue as a defense, and did so, that they exercised all due care and acted as reasonable persons in light of what they knew or should have known. Defendants emphasized their own reasonable care under the circumstances and blamed the accident on Plaintiffs' foolishness for going back to the well and on the carelessness of the contractors who did not follow the advice of Parker and Billington. Therefore, as presented to the jury, this case had all the indicia of a garden variety lawsuit for negligence, not strict liability: ordinary care, proximate cause, comparative fault, and several liability.

Notwithstanding what was actually presented to the jury, Defendants assert that the trial court intended to apply *Saiz* to the facts of this case, and Defendants urge us on appeal to do the same. It is true that the trial court ruled, outside the presence of the jury, that Defendants were engaged in an inherently dangerous activity which would give rise to strict liability under *Saiz*. Defendants also maintain that *Saiz* influenced the way the trial court fashioned certain jury instructions. For example, the jury was instructed that Defendants had a duty "to ensure that reasonable precautions were taken to avoid physical harm to others." Observing that *Saiz* utilizes similar language to describe an employer's duty under strict liability, Defendants urge this Court to hold that the verdict was based on more than just lack of ordinary care.

We do not agree. Mere reference to a duty "to ensure that reasonable precautions

were taken" does not convert this case from ordinary negligence to either liability under Restatement Sections 416 and 427 or strict liability under *Saiz*. Taken alone, the duty to ensure "reasonable precautions" is no more than a restatement of ordinary care. *See, e.g., Seal v. Carlsbad Indep. Sch. Dist.,* 116 N.M. 101, 104, 860 P.2d 743, 746 (1993) (describing duty of care to take reasonable precautions to protect the invitee from dangers); *Klopp v. Wackenhut Corp.,* 113 N.M. 153, 157, 824 P.2d 293, 297 (1992) ("reasonable precautions"); *DeArman v. Popps,* 75 N.M. 39, 43, 400 P.2d 215, 217 (1965) (describing employer's liability). The duty to ensure reasonable precautions does not, by itself, distinguish strict liability under *Saiz;* it is when that duty is imposed as an absolute standard of conduct, regardless of the employer's own exercise of care or state of knowledge, that strict liability is established as a byproduct of engaging in inherently dangerous work. *See Saiz,* 113 N.M. at 402, 827 P.2d at 117. In the case before us, Defendants were not shackled by any such absolute standard and, based on the instructions, we are satisfied that the jury found Defendants liable for their own lack of care, and not because of the sheer danger in the work.

Further, despite what may have been the trial court's intention to apply joint and several liability to Defendants, the court did not do so. Presumably, based upon the court's view of this case in light of *Saiz,* the trial judge was prepared to impose joint and several liability upon Defendants, holding them 100% responsible for Plaintiffs' damages, even if they were found only partially at fault. However, the court never reached that point because the jury essentially found all the fault in Defendants alone (all but 1%). Plaintiffs, satisfied with a judgment reflecting Defendants' actual fault, never asked for the imposition of joint and several liability.

Furthermore, the trial court never presented the jury with the special interrogatories on "reasonable precautions" that *Saiz* requires as a foundation for strict liability. In fact, Plaintiffs offered, but the court rejected, special interrogatories taken almost verbatim from *Saiz,* which asked the jury to identify "what precautions would be deemed reasonably necessary in connection with the work performed on this gas well by the Defendant." With this issue absent from deliberations, the jury's work was further narrowed to negligence alone. We are reminded of a recent opinion authored under similar circumstances, where we stated:

> [Defendants'] arguments concerning strict products liability are misdirected because strict products liability was not submitted to the jury as a separate theory of recovery, and any tangential reference to products liability in the instructions was not sufficiently prejudicial to call for reversal. Since the products liability instructions in this case explain the standard of care in terms of negligence only, we need not discuss whether strict products liability applies to services or used goods because no issue concerning strict products liability was submitted to the jury.

*Clay v. Ferrellgas, Inc.,* 114 N.M. 333, 340, 838 P.2d 487, 494 (Ct.App.1992), *rev'd on other grounds,* 118 N.M. 266, 881 P.2d 11 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995) (citation omitted).

As a result, our focus is on what actually occurred below. We analyze this appeal solely in terms of the theories of negligence that were actually submitted to the jury, saving for another day the intriguing questions posed by Defendants with regard to strict liability under *Saiz.*

## NEGLIGENCE THEORIES

Plaintiffs presented three negligence theories to the jury: (1) failure to use ordinary care in providing Plaintiffs with a safe place to work; (2) failure to use ordinary care in exercising retained control over Rosa 282; and (3) negligence per se based upon the breach of certain governmental regulations pertaining to well safety. Plaintiffs summarized the factual allegations behind each of these theories in Jury Instruction No. 4 and Plaintiffs had the burden of proving at least one of them "to establish the claim of negligence ... in failing to use ordinary care."[1]

---

1. To establish the claim of negligence on the part of the defendants in failing to use ordinary care

As a general proposition, these allegations are founded on well-established New Mexico case law which holds that an employer of contractors on a jobsite has a duty of reasonable care to protect persons on the premises from unreasonably dangerous conditions, including employees of those contractors (like Plaintiffs herein). The extent and nature of the duty is often a function of the degree of control or power retained by the employer over the job. *See Tipton v. Texaco, Inc.,* 103 N.M. 689, 694, 712 P.2d 1351, 1356 (1985); *Requarth v. Brophy,* 111 N.M. 51, 54 801 P.2d 121, 124 (Ct.App.1990); *Fresquez v. Southwestern Indus. Contractors & Riggers, Inc.,* 89 N.M. 525, 530–31, 554 P.2d 986, 991–92 (Ct.App.), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976). The theory is often ascribed to various sections of the Restatement (Second) of Torts, including Sections 343 (premises liability) and 414 (retained control). *See, e.g., Valdez v. Cillessen & Son, Inc.,* 105 N.M. 575, 579, 734 P.2d 1258, 1262 (1987); *Tipton,* 103 N.M. at 694, 712 P.2d at 1356;

to provide plaintiffs with a safe place to work, the plaintiffs have the burden of proving at least one of the following contentions:

1. The defendants failed to use predrilling estimates in a correct manner to select the size and type of wellhead equipment first installed on the Rosa 282 well;
2. The defendants failed to furnish the correct wellhead equipment and proper wrap-around donut on the Rosa 282 well when it was first completed on September 7, 1990;
3. Buddy Knight, as pointman for Parker & Parsley Petroleum Company, Inc. failed to inform and supervise those working on the Rosa 282 well on September 22, 1990 of the proper manner to perform the change-out of the well head equipment and wrap-around donut;
4. The defendants failed to promulgate and implement policies for safe working practices on the Rosa 282 well;
5. The defendants failed to warn of unreasonably dangerous and hazardous conditions on the Rosa 282 well;
6. The defendants failed to advise, direct or consult with their subcontractors to provide for a safe place to work;
7. The defendants' subcontractors failed to follow and apply the knowledge, skill and expertise required for safety at the well site of those with similar responsibilities and jobs in the oil and gas industry;
8. The defendants failed to provide safeguards and precautions required by statutes and regulations of governmental agencies, including but not limited to, the Bureaus of Land Management and the New Mexico Oil and Gas Conservation Commission.

The plaintiffs also contend, and have the burden of proving, that such negligence in failing to use ordinary care to provide plaintiffs with a safe place to work was a proximate cause of the injuries and damages.

To establish the claim of negligence on the part of the defendants in failing to use ordinary care in exercising control over work on the Rosa 282 well, the plaintiffs have the burden of proving that the defendants superintended the work on the Rosa 282 well through a subcontractor. Plaintiffs also have the burden of proving at least one of the following contentions:

1. The defendants knew or should have known that their subcontractors were performing work on the Rosa 282 well in an unreasonably dangerous manner and failed to prevent it by exercising their power of control;
2. The defendants knew or should have known that work performed by their subcontractors created a dangerous condition and failed to remedy it by exercising their power of control;
3. The defendants failed to hire competent, qualified or trained subcontractors to superintend the work on the Rosa 282 well;
4. The defendants failed to provide proper supervision of the work on the Rosa 282 well;
5. The defendants failed to promulgate and implement policies for adequately superintending work on the Rosa 282 well;
6. The defendants failed to advise, direct or consult with their subcontractors to adequately supervise work on the Rosa 282 the well site;
7. The defendants' subcontractors failed to follow and apply the knowledge, skill and expertise required for adequately superintending the work at the well site of those with similar responsibilities and jobs in the oil and gas industry.

The plaintiffs also contend, and have the burden of proving, that such negligence in failing to use ordinary care in exercising control over the work at the well site was a proximate cause of the injuries and damages.

To establish the claim of negligence on the part of the defendants in failing to provide safeguards and precautions required by statutes and regulations of governmental agencies, the plaintiffs have the burden of proving that the defendants' [sic] failed to provide safeguards and precautions required by statutes and regulations of governmental agencies, including but not limited to, the Bureau of Land Management and the New Mexico Oil and Gas Conservation Commission.

The plaintiffs also contend, and have the burden of proving, that such negligence in failing to provide safeguards and precautions required by statutes and regulations of governmental agencies was a proximate cause of the injuries and damages.

*DeArman*, 75 N.M. at 45–46, 400 P.2d at 219; *Requarth*, 111 N.M. at 54, 801 P.2d at 124; *Fresquez*, 89 N.M. at 531, 554 P.2d at 992.

■ On appeal, Defendants mount a detailed, point-by-point assault on the allegations set forth in Jury Instruction No. 4. Defendants argue that even if proven, these factual assertions do not state a legal claim upon which relief can be granted and that there is insufficient evidence supporting these assertions. By and large, however, Defendants failed to preserve the legal challenges they now assert on appeal. We are also satisfied with the legal viability and the sufficiency of the evidence to support enough of Plaintiffs' theories that it would be inappropriate to apply the doctrine of fundamental error to this case or to allow Defendants to raise their issues for the first time on appeal.

■ Fairness underlies the rule of preservation of error. Each party to a lawsuit has only one opportunity to present its case and challenge the case of its opponent; that occurs at trial, and not for the first time on appeal. *See Bloom v. Lewis*, 97 N.M. 435, 438, 640 P.2d 935, 938 (Ct.App.1980), *aff'd in part, rev'd in part*, 96 N.M. 63, 628 P.2d 308 (1981). Objections to a theory of recovery and the sufficiency of the factual allegations underlying it must be brought to the trial court's attention. *See Garcia v. La Farge*, 119 N.M. 532, 540, 893 P.2d 428, 436 (1995). Moreover, the objection on appeal cannot change from that argued to the trial court. *See Andrus v. Gas Co.*, 110 N.M. 593, 598, 798 P.2d 194, 199 (Ct.App.), *cert. denied*, 110 N.M. 260, 794 P.2d 734 (1990). This is particularly true for challenges to jury instructions. *See* SCRA 1986, 1–051(I) (Repl.1992); *Salinas v. John Deere Co.*, 103 N.M. 336, 339–42, 707 P.2d 27, 30–33 (Ct.App.1984), *certs. quashed*, 103 N.M. 287, 705 P.2d 1138 (1985).

■ At the conclusion of the presentation of the evidence, the parties settled jury instructions. However, the settlement conference was never placed on the record. Therefore, we do not know what specific legal objections, if any, Defendants raised to

the content and viability of the factual allegations contained in Jury Instruction No. 4. Although Defendants had the burden of preserving error for the record, they made no effort to reconstruct these objections for the record. *Cf. Nichols Corp. v. Bill Stuckman Constr.*, 105 N.M. 37, 40, 728 P.2d 447, 450 (1986). In the absence of a record we assume that error has not been preserved. *See Graham v. Cocherell*, 105 N.M. 401, 404, 733 P.2d 370, 373 (Ct.App.1987) (limiting this Court's review to questions that have been presented to and ruled on by the trial court). On the record, the trial court solicited a summary of counsel's objections to the jury instructions, and Defendants now offer these abbreviated objections as proof of preservation. Unfortunately, Defendants' efforts below were sparse at best.[2]

For example, the first sentence of the retained control subsection of Jury Instruction No. 4 bases liability upon proof that "[t]he defendants knew or should have known that their subcontractors were performing work on the Rosa 282 well in an unreasonably dangerous manner and failed to prevent it by exercising their power of control." Defendants objected on the record to the lack of evidence supporting the claim, but not to the legal viability of the claim itself. Defendants did not question whether they had a legal duty to exercise control over subcontractors and prevent work from being performed in an unreasonably dangerous manner. That error has not been preserved for appeal. Moreover, it is well-established that an employer does have a legal duty to exercise retained control over the worksite and protect invitees, including employees of a subcontractor, from certain unreasonable risks of harm. *See Requarth*, 111 N.M. at 54, 801 P.2d at 124.

Defendants' only objection to the third portion of Jury Instruction No. 4, pertaining to safety regulations and per se liability, was that:

> This portion of the instruction really relates to statutes and regulations of governmental agencies and my objection would be

2. Present counsel for appellants was not trial counsel below.

that there has been insufficient evidence to allow that issue to go to the jury.

．　．　．　．　．

I object to instruction number 15 setting out both United States Government statutes, regulations as a basis for finding negligence on the part of Evergreen and Parker & Parsley. The evidence presented was insufficient to take that particular issue to the jury.

Defendants now assert that these regulations were outdated and do not apply to natural gas wells. To preserve error, "[a] party must raise the same objection on appeal that was raised at trial." *Andrus,* 110 N.M. at 598, 798 P.2d at 199. Defendant failed to do so.

 The portion of Jury Instruction No. 4 based on unsafe workplace theory also passed without any specific objection to the sufficiency of the legal claim. Defendants only argued that,

> [t]he [eight] listed claims that ... fall under the general category of the safe place to work [do] not, in fact, conform to New Mexico law with regard to what constitutes a safe place to work and what the rights and obligations are of the owner/operator lessee as to specific relation to the duties to the Plaintiffs in this case.

These comments are phrased too broadly; they contravene the well-established principle that the "mere assertion that the given instruction is not an accurate statement of the law is insufficient to alert the mind of the trial judge to the claimed vice of the instruction." *Budagher v. Amrep Corp.,* 97 N.M. 116, 119, 637 P.2d 547, 550 (1981). Further, Defendants failed to submit their own instruction on the point which would have advised the court more specifically of the "claimed vice." It would be a far stretch to hold that "claims ... do not, in fact, conform to New Mexico law" adequately preserved the kind of detailed and comprehensive assault on this instruction which Defendants now wish to make on appeal.

Defendants' motion for directed verdict was equally unavailing, being largely confined to arguments that Plaintiffs failed to meet their burden of going forward with the evidence. Whatever legal arguments were made failed to direct the court's attention to any specific flaw in Plaintiffs' legal theory and equally failed to elicit a focused response from the court.

In only one instance do we agree with Defendants that the argument on appeal corresponds to a specific claim of error made below. During their motion for directed verdict, Defendants protested against Plaintiffs' unsafe workplace theory on the particularized grounds that the duty pertains only to elimination of defects in the work site, the real property, and not in regard to the equipment to be used on the work site. Defendants properly offer this same objection on appeal. In effect, Defendants contend the instruction misstated the law by allowing the jury to find negligence where under New Mexico law there is no duty.

 Defendants cite various cases from other jurisdictions purporting to so hold. However, in New Mexico, an employer's duty to provide a safe workplace for subcontractors and their employees is not limited to real property or the physical contours of the work site; it includes the equipment provided or which should be provided as a matter of reasonable care and worker safety. *See Fresquez,* 89 N.M. at 531, 554 P.2d at 992. As a result, Defendants' objection on this point, although well-preserved, is not persuasive on appeal.

Defendants also urge us to consider their objections anew on appeal, based on the proposition that an objection to a complaint for failure to state a claim upon which relief can be granted may sometimes be raised for the first time on appeal. *See Sundance Mechanical & Util. Corp. v. Atlas,* 109 N.M. 683, 684 789 P.2d 1250, 1251 (1990). Defendants maintain that a jury instruction summarizing the factual allegations of a claim, like Jury Instruction No. 4 in this case, is akin to a complaint embodied with evidence. In *Sundance,* speaking only of a complaint and not jury instructions, our Supreme Court indicated a proclivity to entertain, for the first time on appeal, a motion to dismiss under Rule 12(b)(6). Relying on precedents preceding the date of the present Rules of Civil Procedure, the Court indicated that

these older "statements of the law in New Mexico ... should not be disturbed now." *Id.* at 690, 789 P.2d at 1257. We need not determine the breadth of such a rule, which has already given rise to well-deserved expressions of concern from this Court. *See Padilla v. Estate of Griego*, 113 N.M. 660, 665, 830 P.2d 1348, 1353 (Ct.App.1992). No New Mexico civil case has permitted a litigant to fashion legal objections to jury instructions for the first time on appeal. Our courts uniformly reject similar efforts regarding jury instructions. *See, e.g., Lietzman v. Ruidoso State Bank*, 113 N.M. 480, 484 n. 3, 827 P.2d 1294, 1298 n. 3 (1992). Indeed, in a civil negligence case, this Court has even rejected the claim of fundamental error based on error in jury instructions when raised for the first time on appeal. *See Martinez v. Teague*, 96 N.M. 446, 451, 631 P.2d 1314, 1319 (Ct.App.1981).

■ Nonetheless, we assume without deciding that at some level or degree an instruction or its absence may be so fatally flawed and so fundamentally prejudicial, that an appellate court may decide the point, even without preservation, in the overall interest of fundamental fairness and avoiding manifest injustice. *See Gerrard v. Harvey & Newman Drilling Co.*, 59 N.M. 262, 274, 282 P.2d 1105, 1113 (1955). This is not the case here. Those New Mexico cases that have reversed in reliance on a concept of fundamental error may be characterized as cases in which there is a total absence of anything in the record showing that the party winning judgment in the trial court was entitled to such judgment. *See DesGeorges v. Grainger*, 76 N.M. 52, 56–58, 412 P.2d 6, 9–10 (1966); *Thwaits v. Kennecott Copper Corp.*, 52 N.M. 107, 114, 192 P.2d 553, 557 (1948); *Jaffa v. Lopez*, 38 N.M. 290, 296–97, 31 P.2d 988, 992 (1934); *Schaefer v. Whitson*, 32 N.M. 481, 482, 259 P. 618, 618 (1927); *Sais v. City Elec. Co.*, 26 N.M. 66, 68–69, 188 P. 1110, 1111 (1920); *De Baca v. Perea*, 25 N.M. 442, 446, 184 P. 482, 484 (1919). In this case, several of the theories expressed in Instruction No. 4 were proper legal theories upon which Plaintiffs presented substantial evidence, and Plaintiffs' counsel did not dwell in closing argument on improper theories. Thus, even if we were to apply the fundamental error

doctrine as that is used in criminal cases, there would not be such "an intolerable quantum of confusion ... injected into the case by [the] instructions to a degree that renders the verdict doubtful if not meaningless." *State v. DeSantos*, 89 N.M. 458, 462–63, 553 P.2d 1265, 1269–70 (1976) (three of four theories of murder were not proper theories and were not supported by the evidence, and the prosecutor emphasized them in closing argument).

■ Without addressing each of Defendants' numerous objections to the subparts of Jury Instruction No. 4, we are satisfied that the factual allegations in the instruction fairly and accurately reflect valid theories of negligence, supported by the evidence, and supportive of the verdict. For example, in regard to a safe workplace theory, Defendants object, for the first time on appeal, that Restatement Section 343 is limited to a "possessor of land" and Parker was never a "possessor," only an absentee operator. However, we are persuaded that this theory of negligence under New Mexico law includes entities like Parker to the extent they are in constructive possession as owner/operators, and as the evidence has shown, they exercise some specific control over the wellsite. *See Tipton*, 103 N.M. at 694, 712 P.2d at 1356; *Requarth*, 111 N.M. at 54, 801 P.2d at 124; *Fresquez*, 89 N.M. at 530–31, 554 P.2d at 991–92.

■ Similarly, Defendants argue for the first time that liability under safe workplace theory applied only to unsafe conditions in the worksite and not to dangerous activities engaged in by contractors. We reject any such formalistic distinction. Conditions do not exist in a vacuum; they are usually the result of action (or inaction) on someone's part. In this case, Parker's negligence in failing to instruct and supervise the safe change-out procedure helped create a dangerous condition at the wellsite. The jury was properly instructed to that effect. *See Tipton*, 103 N.M. at 696, 712 P.2d at 1358; *DeArman*, 75 N.M. at 43, 400 P.2d at 217; *Requarth*, 111 N.M. at 54, 801 P.2d at 124; *Fresquez*, 89 N.M. at 525, 554 P.2d at 986.

■ Defendants also pose a new objection to Plaintiffs' theory of retained control, based on the assumption that liability under Restatement (Second) of Torts Section 414 must be vicarious, and since the jury found no fault in the contractors, there can be no imputed negligence in Parker or Evergreen. Although there may be support for this proposition elsewhere, we are satisfied that in New Mexico liability under Restatement (Second) of Torts Section 414 is not so limited. The employer is directly liable for its own negligence in exercising or failing to exercise control over the work of the contractor, and this duty extends to employees of those contractors when injury proximately results. *See Tipton,* 103 N.M. at 689, 712 P.2d at 1351; *DeArman,* 75 N.M. at 43, 400 P.2d at 217; *Requarth,* 111 N.M. at 54, 801 P.2d at 124. Jury Instruction No. 4 presented the jury with an opportunity to find Defendants at fault for their own direct negligence in failing to supervise, failing to promulgate and implement safety policies, and failing to exercise retained control over Billington and others, after Defendants knew or should have known of the dangerous condition. Substantial evidence supported these propositions.

■ Finally, the last portion of Jury Instruction No. 4, in combination with Jury Instruction No. 15, permitted the jury to find Defendants liable under a theory of negligence per se, for noncompliance with certain duties set forth by governmental statute or regulation. For the first time on appeal, Defendants challenge the accuracy and appropriateness of the terminology in the statutes as well as the dates of effectiveness. We are unpersuaded by Defendants' arguments. Those statutes and regulations fairly state a standard of care that was appropriate for consideration by the jury. Any technical deviations, such as minor changes in amendment, were of no import to the jury and did not prejudice Defendants. Further, Ron Britton, an expert in engineering, testified on these points. The statutes and regulations required that Defendants "perform operations and maintain equipment in a safe and workmanlike manner" and "take all precautions necessary for health and safety." Britton testified as to numerous examples, in his opinion, where Parker failed to perform the work in a safe and workmanlike manner. He further opined that Parker violated these statutes and regulations. This evidence sufficiently supported Plaintiffs' theories.

■ Defendants' last plea for preservation of legal error rests with a jury instruction rejected by the trial court. Defendants' requested Jury Instruction No. 19 stated as follows:

The employer of an independent contractor owes no duty to the independent contractor's employees where the employer does not control the work to be performed. *To find a duty in this case owed by Defendants to Plaintiffs, you must find that defendants had control over the means and manner of the work being performed at the wellhead site and that no other entity or individual controlled the means and manner of the work.* Defendants Parker & Parsley Petroleum Co. and Evergreen Resources, Inc. cannot be held liable for plaintiffs' injuries if Parker & Parsley Petroleum Co. and Evergreen Resources, Inc. only retained supervisory control over the work and another entity or individual controlled the means and manner of the performance of the work. (Emphasis added.)

Although this instruction may well have conformed to Defendants' theory of the case, its rejection can be error only if the instruction constitutes a correct statement of the law. *See Mireles v. Broderick,* 117 N.M. 445, 450, 872 P.2d 863, 868 (1994) ("[A] requested instruction that is erroneously or inaccurately drafted need not be given by the trial court.").

■ In this case, Plaintiffs based their case on a theory that Parker retained power to exercise supervisory control over the means and manner of the work (such as the power to require the use of a BOP), and therefore Parker should be liable for failing to exercise that control in a responsible manner. This is a proper theory of recovery. *See DeArman,* 75 N.M. at 46–47, 400 P.2d at 220 (liability based upon the negligent exercise of supervisory control depending on the degree and extent); *cf. Fresquez,* 89 N.M. at 531, 554 P.2d at 992 (no liability just for

"general superintendence"). However, Defendants' tendered instruction would have required Defendants to have exclusive control over "the means and manner of the work," as a prerequisite to a legal duty of ordinary care. This is not the law. *Fresquez,* 89 N.M. at 531, 554 P.2d at 992. Control can be shared; there is still a duty of care to the extent control exists. *Id.* Defendants' proposal also denied a duty of care "where the employer does not control the work to be performed." Yet liability stems from retention of the right of control, whether or not it is exercised, just as much as from the act of control. *DeArman,* 75 N.M. at 47, 400 P.2d at 220. Therefore, the trial court properly refused Defendants' proposed Jury Instruction No. 19 as an inaccurate statement of the law.

One issue remains: whether the jury's verdict holding Evergreen 9% at fault was sufficiently supported by the evidence. We hold that it was and affirm the jury's award as to Evergreen. As a preliminary matter, Evergreen now maintains that Evergreen Resources, Incorporated, the Defendant, and Evergreen Operating Corporation, a non-party, were two separate entities and Defendant is being charged with conduct that Evergreen Operating Corporation actually performed. However, Defendant made no such objection to the trial court when these allegations could easily have been proven and the confusion clarified. We will not entertain this argument for the first time on appeal.

Substantively, Evergreen asserts that it was merely a financial investor in the well and that it exercised no control over the wellsite or any of the operations conducted there. However, before soliciting Parker as "operator" of the project, Evergreen was the "operator," and Evergreen alone had control over the wellsite. While acting as operator, Evergreen calculated the predrilling estimate of gas production at Rosa 282.

There was evidence that Evergreen estimated that Rosa 282 would produce 100,000 to 200,000 cubic feet of gas per day. According to Ronald Britton, an expert in engineering, nearby wells had gas flows of 3 to 5 million cubic feet of gas per day. Ultimately, the Rosa Unit produced over 6 million cubic feet per day. As a result, Evergreen's estimate was approximately thirty to sixty times below the amount of gas actually realized. Britton testified that Evergreen should have taken into account the amount of gas these nearby wells were producing when calculating its estimates. Thus, there was evidence from which the jury could reasonably conclude that Evergreen acted negligently when it compiled the predrilling estimates.

The jury could reasonably have concluded that these estimates contributed to the occurrences that eventually led to the blow-up. Parker relied on Evergreen's calculations in determining the size of the wrap-around donut and the other well-head equipment. According to at least some of the evidence, Parker had to replace the equipment because it was inadequate to handle the pressure. This, in turn, led to the faulty change-out procedure which proximately caused the gas well explosion. *Cf. Torres v. Department of Pub. Safety,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) (discussing injuries as proximate cause of police negligence). In addition, there was evidence showing that (1) Evergreen had its own paid personnel on the site during the drilling and completion of the well; (2) Evergreen remained a "consultant" for drilling, completing, and operating Rosa 282; (3) Evergreen was responsible for obtaining all necessary permits to drill and operate the wells; and (4) Evergreen retained the power to remove Parker as operator if Parker failed to carry out its duties. However one may characterize Evergreen's role, the evidence clearly supports a view that Evergreen was more than just a passive investor.

To the extent supported by the evidence, we believe that Evergreen's participation and authority regarding the well gave rise to a proportionate degree of legal responsibility for the safety of workers foreseeably affected. We hold that there was sufficient evidence to support a verdict of some liability in Evergreen based upon some of the same theories already discussed regarding Parker, and particularly including Evergreen's duty to exercise reasonable care over the workplace. Evergreen's limited percentage of fault (9%) reflects a reasonable view of the

evidence as determined by the jury. Again, to the extent that Evergreen claims that some of the theories on which the case was submitted to the jury were not applicable to it, we repeat that specific contentions must be made known to the trial court.

## PUNITIVE DAMAGES

■ The jury awarded Plaintiffs a total of $7,000,000 in punitive damages against Parker based on a jury instruction taken directly from that portion of SCRA 1986, 13–1827 (Repl.1991) which authorizes punitive damages for "gross negligence." On appeal, Parker argues that an award of punitive damages requires a "culpable mental state" and that there was insufficient evidence of any such mental culpability on the part of Parker to support the verdict. At oral argument Defendants also claimed, for the first time, that gross negligence is legally insufficient as a standard for punitive damages because gross negligence does not rise to the level of a "culpable mental state." Defendants took this position on oral argument despite having agreed in their reply brief that Plaintiffs only had to prove the degree of culpable mental state associated with gross negligence. We do not directly address an issue raised for the first time at oral argument. Cf. Hale v. Basin Motor Co., 110 N.M. 314, 321, 795 P.2d 1006, 1013 (1990) (issues raised for the first time in reply brief will not be addressed); Leszinske v. Poole, 110 N.M. 663, 666, 798 P.2d 1049, 1052 (Ct. App.) (same), cert. denied, 110 N.M. 533, 797 P.2d 983 (1990).

■ We first address the issues that were properly raised below and on appeal, including the sufficiency of the evidence. Parker had the right to control conduct at the work site. With that control came Parker's responsibility for the safety of those who worked there. See Valdez, 105 N.M. at 579, 734 P.2d at 1262. Despite this responsibility, there was evidence that Parker refused to address contractor safety in an adequate manner. Parker made contractor safety the responsibility of the contractor, not the operator. Evidence of corporate policy to this effect included Parker's "safety manual" which failed to discuss drilling and completing operations, the very time when most serious accidents occur. Britton, Plaintiffs' expert, spoke about this failure. He testified that Parker's supervision of the work was nonexistent or poor at best, and that Parker failed dramatically to take reasonable safety precautions. See Jim v. Budd, 107 N.M. 489, 493, 760 P.2d 782, 786 (Ct.App.) (province of jury to weigh the evidence and credibility of witnesses), cert. denied, 106 N.M. 95, 739 P.2d 509 (1987).

Parker's failure to exercise control over safety at the wellsite was magnified by its choice of personnel in charge of operations, Buddy Knight. Knight's testimony indicated that he knew very little about industry safety standards that were in effect at the time the Rosa Unit was developed. However, Knight did acknowledge that he was familiar with the use of a BOP. He also knew that applicable Bureau of Land Management regulations and New Mexico Oil and Gas Conservation Department rules required the use of a BOP. In fact, in other locations Knight had previously written safety procedures detailing how to prevent blow-outs with a BOP. However, Knight did not prepare any such procedures for Rosa 282, and he otherwise failed to enforce the use of a BOP at the well. This evidence, subject to the weight ascribed to it by the jury, would support Plaintiffs' theory of recovery: that Parker deliberately and intentionally chose not to act, despite its duty to provide for worker safety and having the means to implement it. In our view, this is evidence sufficient to support a jury finding of either gross negligence or reckless indifference and a culpable mental state to support the award of punitive damages against Parker.

■ Parker complains about counsel's statement to the jury that they could consider the "cumulative effect" of Parker's conduct. However, the Supreme Court in Clay, 118 N.M. at 271, 881 P.2d at 16, expressly approved of "cumulatively" viewing the evidence supporting punitive damages. Parker also complains that the jury instruction incorrectly allowed punitive damages based on the acts or omissions of Knight, an employee. However, a corporation is responsible for the actions of its managerial employees if they act according to corporate policy and within

the scope of their duties. *See Templin v. Mountain Bell Tel. Co.*, 97 N.M. 699, 705, 643 P.2d 263, 269 (Ct.App.), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982). The evidence of Knight's status in the company as well as the company's corporate policy adequately supports the punitive damage award without a separate showing of ratification or authorization, such as Defendant would impose. *See Albuquerque Concrete Coring Co. v. Pan Am World Servs.*, 118 N.M. 140, 144–46, 879 P.2d 772, 776–78 (1994). Moreover, when Plaintiffs first submitted, then withdrew, an instruction on ratification, Defendants neither objected nor submitted their own instruction requiring ratification.

We next address the issue raised for the first time at oral argument. In *Paiz v. State Farm Fire & Casualty Co.*, 118 N.M. 203, 880 P.2d 300 (1994), our Supreme Court reversed an award of punitive damages for a breach of insurance contract because the jury instruction permitted punitive damages solely upon a finding of gross negligence. The Court stated:

> However, to reaffirm that this Court has not lost sight of the limited purpose of punitive damages—to punish and deter persons from conduct manifesting a "culpable mental state"—we now disavow the proposition that *in a contract case,* including one involving an insurance contract, punitive damages may be predicated solely on *gross negligence.* In addition to, or in lieu of, such negligence there must be evidence of an "evil motive" or a "culpable mental state."

*Id.* at 211, 880 P.2d at 308 (Emphasis added.). Although the holding in *Paiz* is limited to contracts, the Court noticeably looks for authority to several recognized treatises on torts. *Id.* The Court specifically instructs that the uniform jury instruction on punitive damages, SCRA 13–1827, which applies to both contract and tort, should be modified in accordance with the opinion. *Paiz,* 118 N.M. at 213, 880 P.2d at 310. Thus, the Court gives every indication that "gross negligence" will no longer support punitive damages in tort cases as well. *Cf. Hood v. Fulkerson,* 102 N.M. 677, 680, 699 P.2d 608, 611 (1985) ("The courts of New Mexico do not distin-guish between tort and contract in the application of punitive damages.").

Almost immediately after *Paiz,* the Supreme Court decided *Clay,* 118 N.M. at 266, 881 P.2d at 11, in which the punitive damages instruction required a jury finding that the defendant acted recklessly *and* with gross negligence. Our Supreme Court expressly declined to address the question confronting us today because the jury instruction included recklessness, a standard which does encompass a culpable mental state. However, the Court forcefully reiterated its position that "[t]o be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." *Id.* at 269, 881 P.2d at 14 (citation omitted). The Court noticeably omitted any reference to "gross negligence."

In Parker's case, Plaintiffs submitted an instruction on punitive damages which included the standard terms: recklessness, wanton conduct, or gross negligence. *See* SCRA 13–1827. Plaintiffs also cited to *Jessen v. National Excess Insurance Co.,* 108 N.M. 625, 776 P.2d 1244 (1989), which at the time of trial had only recently upheld an award of punitive damages based on an instruction of reckless *or* grossly negligent conduct. Parker did not specifically object to the gross negligence standard. Rather, Parker's only response was to supplement Plaintiff's submittal with its own, non-UJI instruction which proposed: "As punitive damages are in the nature of punishment, it is necessary that there be some evidence of a culpable mental state."

After argument and without objection from Parker, the trial court eliminated recklessness and wanton conduct from the punitive damages instruction, retaining only gross negligence. No reasons were given by the court, at least not on the record. Thus, in strict accordance with SCRA 13–1827 and with New Mexico case law then in effect, the trial court instructed the jury that:

> If you find that any plaintiff should recover compensation for damages, and if you further find that the conduct of the defendant Parker & Parsley Petroleum

Company, Inc. was grossly negligent, then you may award punitive damages.

. . . . .

Grossly negligent conduct is an act or omission done without the exercise of even slight care under the circumstances.

The court denied Parker's non-UJI instruction.

■■■ Parker now argues that the instruction should not have relied on gross negligence alone. Yet Plaintiffs, not Defendants, originally submitted the instruction with the recklessness language, and Parker remained silent when the court deleted it. Parker strains the limits of fairness in demanding reversal under these circumstances.

As we have indicated, the evidence would have supported a jury verdict of punitive damages under a recklessness standard. This distinguishes Parker's situation from that in *Paiz,* where the Supreme Court noted the absence of evidence of bad faith and the trial court ruled the evidence was insufficient to support punitive damages on any standard more culpable than gross negligence. *Paiz,* 118 N.M. at 205 n. 1, 880 P.2d at 302 n. 1.

Further, Defendants' tendered instruction would have done no more than inform the jury of the need for evidence of a ·culpable mental state. At most, this language appears to provide a vague explanation of the policy rationale underlying punitive damages. The proposed instruction was only offered to supplement, not to supplant, the UJI instruction on gross negligence. Given the fact that Defendants agreed, as late as the filing of their reply brief, that the culpable mental state required was consistent with gross negligence, and nothing more, we do not believe the trial court was ever apprised that anything more than gross negligence was required in instructing the jury. Thus, to the extent Defendants now claim that the culpable mental state reflected in gross negligence will not support punitive damages, we believe, in all fairness, that error was not adequately brought to the attention of the court below, and thereby preserved, nor do we believe that Defendants have identified an error properly characterized as fundamental. On this record, we will not reverse. *Com-*

*pare Flores v. Baca,* 117 N.M. 306, 314, 871 P.2d 962, 970 (1994) (disregarding error in jury instruction on grounds of substantial evidence where large verdict supported by substantial evidence proving the very element omitted from instruction) *with In re Ferrill,* 97 N.M. 383, 392, 640 P.2d 489, 498 (Ct.App.1991) (judgment will not be reversed because of erroneous instruction, unless evidence indicates that verdict probably would have been different), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982).

*HINGER'S PSYCHOLOGICAL EVALUATION*

■■■ Parker complains that the trial court abused its discretion in denying Parker's motion to strike all matters pertaining to Plaintiff Hinger's psychological damage. Hinger failed to attend two scheduled independent medical examinations (IME). In denying Parker's motion, the trial court considered the fact that Parker's initial request for the IME occurred only two weeks before trial, and their second request occurred two weeks into trial. The court noted that the requests were very late and that there were "ample opportunities" before trial to conduct the IME. Hinger did not receive notice of the first scheduled IME and therefore was reasonably excused from attendance. With regard to the second scheduled IME, the trial court took judicial notice of a severe snowstorm on that day and commented "I can't fault the man for not doing anything on that particular day, when even the courts were closing because of the weather outside." Thus, there were sufficient facts to support the trial court's exercise of discretion, and the trial court did not abuse its discretion in either instance.

*CROSS–APPEAL*

■■■ After the verdict, Defendants filed a motion to amend the judgment, asserting that "[b]ecause the Court applied the *Saiz* rule of law which hold[s] the employe[r]'s liability to be nondelegable and not vicarious . . . and to be based on strict liability, the judgment should be reduced by $2.2 million paid in settlement of negligence claims by the original co-defendants." Defendants argued that because *Saiz* was applied to the

448

case, joint and several liability and a right to indemnification or contribution necessarily applied as well.

The trial court ruled in favor of Defendants and reduced the verdict by the amount paid in settlement by the contractors.[3] The trial court explained: "I have stated that the *Saiz* case does apply. *Saiz* ... takes it out of the *Bartlett* ruling and makes it joint and several. If there is joint and several liability, then there has to be the right of indemnification."

Resolution of this issue turns on whether the principles of *Saiz* influenced the jury's verdict. We have previously held that the verdict was based upon principles of comparative fault, negligence, and several liability. Therefore, the trial court's reduction of the jury award was erroneous. *See* NMSA 1978, § 41–3A–1(E) (Repl.Pamp.1989); *Wilson v. Galt*, 100 N.M. 227, 232, 668 P.2d 1104, 1109 (Ct.App.), *cert. quashed*, 100 N.M. 192, 668 P.2d 308 (1983).

*CONCLUSION*

We decide against Defendants on their appeal and affirm the actions of the trial court in support of the jury verdict and judgment. We decide in favor of Plaintiffs on their cross-appeal and reverse the trial court in regard to reduction of the verdict. We remand for entry of a new judgment consistent with the verdict as returned by the jury.

IT IS SO ORDERED.

MINZNER, Justice (sitting by designation) and PICKARD, J., concur.

---

3. Although $2,200,000 was paid in settlement, the verdict was only reduced by $2,149,000. The $51,000 subtracted from the settlement amount represented Billington's 1% share of fault which had been previously deducted from the initial judgment.